CENTRAL TRUST CO. OF NEW YORK v. SAVANNAH & W. R. CO. (MILLER & SON, Interveners).

(Circuit Court, N. D. Georgia. June 13, 1895.)

No. 504.

CARRIERS—DELAY IN DELIVERY—BILL OF LADING—PAROL EVIDENCE—DAMAGES.
    While a bill of lading which is silent as to the time of delivery is held to contain an implied obligation to deliver in a reasonable time, and this obligation cannot be varied by parol evidence, yet, for the purpose of affecting the measure of damages, it is competent to show by parol that notice was brought home to the carrier that unusual loss would result from delay in making the delivery.

This was a petition of intervention filed by G. H. Miller & Son against the receivers of the Savannah & Western Railroad Company to recover damages alleged to have resulted from delay in delivering a shipment of fruit trees.

Dean & Dean, for interveners.
H. B. Tompkins, for defendant.

NEWMAN, District Judge. Fruit trees were received by the defendant receivers from the interveners at Rome, Ga., for shipment to certain points in Texas and the Indian Territory. The trees were not delivered until after the time when the purchasers from interveners could be compelled, under their contract of purchase, to receive them. The petition of interveners claiming damages for this delay was referred to a special master, who reports in favor of the interveners for the full amount of the value of the trees so

shipped, less the amount for which they were actually sold, after making a general deduction of 10 per cent., which the proof showed was the usual loss to the shippers of the trees from failure on the part of the purchasers to receive and pay for them. The following agreement was entered into at the hearing before the special master:

"It is further agreed between counsel for the interveners and for the receivers that, independently of the contract for the sale of the trees, they were worth as much when they arrived at their destination as at any time previously; that is, that there was no fluctuation in the price of the trees generally."

No question is raised but that the receivers, as the initial carrier, are liable, under the facts of the case, to the interveners, provided there is any liability at all.

On exceptions to the report of the master, the main question discussed was this: Does the bill of lading embody the contract of carriage, so that parol evidence will not be heard to show notice to the carrier of the special circumstances connected with the shipment, and the necessity for a speedy delivery? The contention is that the bill of lading contains the whole contract, from which the question of liability, and the extent of liability, must be determined, as it stands upon the same footing as other written contracts, and cannot be varied by proof of contemporaneous parol understanding. The opposite contention is that while this is true, and that a bill of lading, such as was given in this instance, cannot be varied by evidence of a parol agreement so as to make it other than a contract for delivery within a reasonable time, yet evidence may be heard of notice to shipper, such as is above suggested, for the purpose of determining the measure of damages; that, while the carrier can only be held to delivery within a reasonable time, evidence that notice that peculiar and unusual loss will result to the shipper from a failure to so deliver may be heard on the question of the amount of the recovery, where delay has resulted. The rule admitting evidence of notice to a carrier, by a shipper, of peculiar circumstances surrounding the shipment, requiring prompt delivery, as affecting the measure of damages, is easily distinguishable, under the authorities, from that which rejects parol evidence to vary the terms of a bill of lading. In the latter case it is seeking to vary the express terms and the legal import of the contract of carriage, which has been reduced to writing. In the former case the contract contained in the bill of lading, as to its terms and legal import, stands unaffected by extrinsic evidence, and the testimony is admitted, not to vary it, but, conceding it to stand as it is written, and as the law implies, to affect only the measure of damages for its breach. The rule is stated in Hutch. Carr. § 772, as follows:

"But there may be circumstances under which the application of this rule would be inequitable. There may be, and frequently are, cases in which, for special reasons, the shipper may desire that the transportation of his goods shall be hastened; and if, with a knowledge of these circumstances, the carrier should unreasonably delay the carriage, or if, having expressly contracted to carry them within a given time, or for a given purpose, he should negligently delay them beyond that time, or so as to defeat that pur-

pose, the difference in the value of the goods at the time of their actual arrival and at the time when they should have been delivered may prove a very inadequate recompense to their owner. As where the owner of goods had made an advantageous sale of them, and the carrier, being informed of this fact, undertook to carry and deliver them within the time, but through negligence failed to do so, whereby the plaintiff lost the advantage of his bargain, it was held that the carrier was liable for whatever the owner had lost by the failure to deliver in time, and that this would be the difference between the contract price and the market value of the goods when delivered. But where the goods were sold 'to arrive' by a certain time and at a certain price, but the carrier was not informed of the fact, and knew nothing of the importance to the shipper of a prompt delivery, it was held that the carrier could be held liable only for the depreciation in the market value between the time when they should have been and the time when they were delivered. The fact that the carrier was notified of the special circumstances demanding greater diligence is thus seen to be a crucial one, and that the carrier was so informed must be both alleged and proved."

Besides the authorities cited in the notes to this section are: Railroad Co. v. Cobb, 64 Ill. 128; Railroad Co. v. Ragsdale, 46 Miss. 458; King v. Woodbridge, 34 Vt. 565; Horne v. Railway Co., L. R. 8 C. P. 131.

A careful examination of the case so strongly relied on by counsel for receivers (Railroad Co. v. Hasselkus, 91 Ga. 382, 17 S. E. 838) shows that what it really decides is that where an ordinary bill of lading is given, and no time for delivery of the goods is specified, the law implies that they are to be delivered in a reasonable time, and that parol evidence will not be admitted to show that there was an express agreement to deliver at a specified time. Such is doubtless true of all the cases cited on this subject. Certainly, there is no conflict whatever between this class of cases and those which admit testimony of this character for the purpose of fixing damages.

The legal conclusions, as applicable to this case, may be stated in this way:

1. Where a common carrier receives goods for transportation, and the bill of lading is silent as to the time of delivery at the point of destination, the law implies an obligation to deliver them within a reasonable time.

2. Where there is a failure on the part of the common carrier to deliver goods at the point of destination within a reasonable time, ordinarily the measure of damages is the difference between the market value of the goods at the time of delivery and the time when they should have been delivered.

3. Where a common carrier has notice of peculiar circumstances connected with the sale and contract for delivery of goods, which will result in an unusual loss to the shipper from delay in delivery, the carrier is responsible for the real damages sustained from such delay if the notice given is of such character, and goes to such extent, in informing the carrier of the shipper's situation, that the carrier will be presumed to have contracted with reference thereto.

The real matter, therefore, for determination, is, was there such notice by the shipper to the receivers' agent at Rome as to put the receivers on notice of the special circumstances connected with this shipment? The master fails to find that there was or was not such notice. He finds that there were "peculiar circumstances" which

justified a recovery for the value of the trees, less the deductions referred to. John Miller, a member of the intervening firm, testified before the special master in reference to a conversation between himself and C. S. Pruden, the agent, in reference to the shipment of these trees. The following is an extract from his testimony as reported by the master:

"Q. State, Mr. Miller, what was said by you to Mr. C. S. Pruden, or any other agent of the road over which you shipped these trees, about the necessity and the reason for a prompt and speedy shipment. Begin at the beginning,—at the time when you first begun to make shipments, and when they solicited you to ship over their road. A. That is a branch of the business that I had very little to do with. My father attended to that, and I attended to the packing. Any conversation I would have with Mr. Pruden was when they would come out to our packing shed. Q. State what may have passed on such an occasion. What did pass? A. In regard to this particular shipment to Texas, Mr. Pruden came out where we were packing. We had some shipments to Texas previous to that time over the other roads, and he said we were not using them right in giving other roads our shipments, as they had put us in a spur, and they ought to have at least a share of that Western business; and I told him that we were willing, and would give them the preference, and, in regard to the other shipments, that their road didn't have the rates; and then I told him about a shipment that we were making up for Texas, and I told him about the time we had to put them into Fort Worth. That is about the substance of it. Q. What did he say, and what did you say about the time of the necessity for getting them there at a given time? A. I told him that we had certain dates to meet out there, and in shipping it would have to be put in there at a certain time or there would be a loss to us. Q. What did he say? A. He said that their road could put them in as quick as any other, and that about ten days would be ample time to put them into Fort Worth. Q. Did you tell him why—explain to him why—there would be a loss to you? A. I could not say whether I did or not at that special time. Q. At any time? A. I have done so at their office. Told them that the goods were sold to be delivered at a certain day and date, and if they were not there on that date the goods would be a loss to us. Q. Did you tell him why,—what would make the loss? A. The customer would not take the goods. If we did not fill our contract, the customers would not fill theirs."

This testimony is not denied by Mr. Pruden, who was a witness before the special master. On the contrary, he states in his evidence this:

"Mr. John Miller says I came out there in regard to these special shipments. I can't swear differently, as I have been there at various times, and don't remember whether I was there in regard to this special shipment or not. Perhaps I was. I can't say at this late date."

It seems, therefore, that the notice to the carrier was sufficient to bring the case within what is understood to be the correct rule on this subject, as it has been stated above. The report of the special master, while not explicit upon the precise question involved, is correct in its conclusion, and the amount found in favor of the interveners is justified by the evidence. Exceptions must be overruled, and the report confirmed.