R. A. ELZY, Appellee, v. THE ADAMS EXPRESS COMPANY, Appellant.

**Carriers:** DELAY IN SHIPMENT: SPECIAL DAMAGES.  Where an express company had notice at the time of shipping a shaft for a steam shovel outfit that the outfit had broken down, and that it and the crew of men operating the same would remain idle until the shaft was received, the company, if negligent, was liable

in damages for the actual rental paid by plaintiff for the use of hired machinery, the fair rental value for the use of his own machinery, and the wages actually and necessarily paid the workmen.

**Same:** NOTICE. Where the shipper informed the agent that he was shipping an iron shaft of considerable weight by express rather than by freight to save time, that a steam shovel outfit had broken down and that it and the crew would be idle until the shaft was received, the notice was sufficient to apprise defendant that special damages would result to plaintiff if shipment was delayed.

**Credibility of witnesses:** STATEMENT OF COURT: EFFECT. A statement of the trial court that he believed two witnesses testifying adversely to each other concerning a state of facts were both honest in their statements and equally credible in character, did not amount to a finding that the evidence was in equipoise on the disputed question, so as to invalidate a conclusion in favor of one contention which had support in the other circumstances of the case.

**Damages:** RENTAL VALUE. The owner of machinery may recover damages for its rental value when deprived of its use through the fault of another, upon proof of the value of its use, although it is not shown that the same had a rental value.— McClain, J., dissenting.

*Appeal from Marshall District Court.*—Hon. C. B. Bradshaw, Judge.

SATURDAY, FEBRUARY 20, 1909.

THIS is an action for damages against the defendant as a common carrier for negligent delay in the delivery of a consignment. The damages claimed consisted of a number of items. There was a trial to the court without a jury. Judgment for the plaintiff for a part of his claim only. Both parties appeal. The defendant first perfected its appeal, and is designated as appellant.—*Affirmed* on defendant's appeal. *Reversed* on plaintiff's appeal.

*Anthony C. Daly,* for appellant.

*Binford & Farber,* for appellee.

EVANS, C. J.—In January, 1906, the plaintiff was a general contractor, and had been such for many years prior thereto. At the time stated he was engaged in the performance of a contract for grading and constructing a railroad right of way for the Big Four Railway Company near Indianapolis, Ind. The machinery in use by him for such purpose consisted of a steam shovel, two locomotives, forty-two dump cars, and a spreader car, with crews numbering eight men. The steam shovel was the property of the Iowa Central Railway Company, and was leased to the plaintiff at a specified rental per day. The locomotives were the property of another railway company, and, in like manner, were leased to the plaintiff. The other property enumerated belonged to the plaintiff. On January 7, 1906, the swing shaft of the steam shovel was broken, rendering the operation of the steam shovel impossible until another could be obtained. The stoppage of the steam shovel rendered it impossible to utilize the rest of the outfit or crew. The foreman at Indianapolis wired the facts to the home office at Marshalltown. Thereupon another shaft was obtained from the Iowa Central Railway Company at Marshalltown, and was delivered to the defendant for immediate shipment to the plaintiff as consignee at Indianapolis, Ind. The business at Marshalltown was transacted for plaintiff by one Baumgardner, his bookkeeper. Baumgardner personally saw the local agent of the defendant company, and explained to him the reasons for the shipment and the importance of a quick delivery. He stated to him, in substance, that plaintiff's outfit would be idle until the shaft could be obtained, and stated, also, what the outfit consisted of. The shaft weighed from three hundred to five hundred pounds, and was delivered to the defendant at such time on the 8th of January that in the ordinary course of transportation it would reach Indian-

apolis the next day. The bill of lading which usually attends the shipment actually did reach Indianapolis on the next day. But through some negligence of the defendant the shaft itself was sent to some other destination, and did not reach the Indianapolis office until January 20th. The plaintiff could not obtain the shaft in the market at any other place, nor could one have been manufactured in a less period of time than three weeks. The plaintiff was therefore helpless to proceed with his work until this identical shaft should reach him. The items of damage claimed by him were the rentals actually paid by him for the use of the steam shovel and the locomotives during the period of negligent delay, and the wages actually and necessarily paid by him to the men in charge and the fair rental value of his own property, namely, the dump cars and the spreader car during such period of delay. The court allowed him the rentals and wages actually paid by him, but refused to allow him the rental value of his own property. From the judgment of allowance the defendant appeals. From the refusal to allow the plaintiff appeals. We will consider first the questions arising upon the defendant's appeal.

I. It is contended by the defendant that the damages allowed by the lower court were remote and consequential and were not within the contemplation of the parties when the contract of shipment was entered into. The lower court found that at the time of the shipment the defendant had notice of the very situation as it existed, and that it therefore knew the consequences which would result from negligent delay in delivery. This finding of the lower court has sufficient support in the testimony. The plaintiff has sued in tort and not on the contract. The present weight of authority is that where defendant has notice at the time of shipment of the existing facts out of which special damages would naturally arise to plaintiff by negli-

1. CARRIERS: delay in shipment: special damages.

gent delay in delivery, the defendant may be held liable for such special damages. The general rule in torts is that all damages naturally and proximately resulting from the injury are recoverable. This rule is construed to include special damages, such as are involved in this case, where the carrier has notice of the fact that delay in the delivery of goods will result in special damage to the shipper. *Cowan v. Western Union Telegraph Co.*, 122 Iowa, 379; *Weston v. Boston & Maine Ry. Co.*, 190 Mass. 298 (76 N. E. 1050, 4 L. R. A. (N. S.) 569, 112 Am. St. Rep. 330); *Missouri & Pacific Ry. Co. v. Peru Van Zant Co.*, 73 Kan. 295 (85 Pac. 408, 87 Pac. 80); *Central Trust Co. v. Savannah & W. Ry. Co.* (C. C.) 69 Fed. 683.

II.   It is contended by the defendant that the notice to the local agent at Marshalltown was not sufficiently definite to bring the case within the rule of special damages.

*2. SAME: notice.* The testimony of Baumgardner on that question is as follows: "Bartmess [the local agent] asked me about the weight, and said: 'Why don't you ship it by freight, and save some expense?' I told him the steam shovel was broken down, and we were in a hurry to get it over there to get the shovel in operation. I told him the whole crew was idle until we could get the shaft over there; that the whole outfit was idle until we could get the shaft over there. I told him the outfit consisted of a steam shovel with two engines, forty-two dump cars, and a spreader car, and the men, of course, that were necessary to operate them, known as a steam shovel gang or outfit. I do not remember that I said anything at that time about the number of men that were employed on it." Assuming this testimony to be true, as the court found it to be, we think it was sufficient to bring the plaintiff within the rule as to special damages. It clearly conveyed knowledge to the defendant that special damages of the nature now claimed would result to plaintiff if shipment

were delayed. This is a fair compliance with the spirit of the rule requiring notice in such cases.

III. Bartmess, the local agent of the defendant company, denied the statements of the witness Baumgardner as to the alleged notice. The trial court in the discussion of this evidence stated that he believed both witnesses to be honest in their statements and equally credible in their character, but he found the facts nevertheless in accordance with the affirmative testimony of the witness Baumgardner. Counsel for defendant argues earnestly that the statement of the court concerning the two witnesses amounted to a finding that the evidence was in equipoise on this question, and that, therefore, there was no preponderance in favor of the plaintiff. The argument in support of this contention is ingenious, but not sound. The court did not find that the testimony of the two witnesses' was equally credible or of equal weight. It found the facts against the testimony of Bartmess without imputing to him any intentional false swearing. The circumstances of the case corroborate the testimony of Baumgardner. The very fact that a nonperishable article weighing from three hundred to five hundred pounds should be sent by express, instead of by freight, was itself a circumstance which might naturally attract attention to itself, and tends to corroborate plaintiff in his statement that Bartmess inquired why it was shipped by express instead of by freight. The defendant's point in this respect is not well taken.

3. CREDIBILITY OF WITNESSES: statement of court: effect.

IV. The plaintiff introduced evidence of the rental value of the use of his own property, namely, the dump cars and the spreader car during the period of delay. This consisted of the testimony of two witnesses, each of whom testified that in his opinion the smaller cars were each worth fifty cents a day, and the larger ones $1 a day, and the spreader car $1.25 a day, making a total of $275. This testimony was

4. DAMAGES: rental value.

not based on any market rental rate, because there was none, and the defendant urged objections to its competency and sufficiency, both at the time it was offered and at the time of the submission of the case. The court admitted the evidence as competent, but refused to allow these items in its final judgment, and as a reason for such refusal stated that he "thought it was too much in the nature of profits." The testimony on the subject was not strong, but it was uncontradicted. The plaintiff urges on his appeal that the items testified to constituted a proper measure of damages, and that they were not in the nature of profits, as the term is used in such cases, and that he is entitled to a reversal on that ground and to an order for an allowance of the items. If the court had refused the items because of the insufficiency of the testimony, we should deem the question quite beyond our reach. The writer is of the opinion that the finding of the court should be so construed, and that the reason given by the court was intended to characterize the weight and sufficiency of the evidence, rather than the nature or competency of it. If this position were accepted, it would require an affirmance of the judgment on both appeals. If, however, the reason given by the court is to be deemed as referring to the nature of the evidence as improper measure of damages, it can not be sustained. As a measure of damages, it is of the same nature as the rentals which the court actually allowed. The majority of the members of the court are of the opinion that the finding of the court should be construed as equivalent to an allowance of the items so far as the weight of evidence is concerned, but a rejection of the same, because not proper measure of damages. On this view there must be a reversal on plaintiff's appeal and an affirmance on defendant's appeal. In pursuance of the construction thus put upon the findings of the lower court, plaintiff will be permitted to take judgment in this court for the items in question.

*Affirmed* on defendant's appeal. *Reversed* on plaintiff's appeal.

McCLAIN, J. (dissenting).—On plaintiff's appeal the holding of the majority is that there should be a recovery of rental value of plaintiff's machinery while it lay idle on account of defendant's fault, although it does not appear that such machinery had a rental value or was kept for rent or could have been rented. As it seems to me, this is plainly wrong. Profits lost may be allowed where reasonably definite and certain; but here there was not a suggestion in the evidence of even a possibility that plaintiff would have received any rental for his machinery if defendant's contract to carry promptly had been performed; nor is there any suggestion that any equivalent of rental value of his own machinery was lost through defendant's fault. The rule that in such a case as this the recovery should be limited to compensation, which should not include damages which are merely speculative and wholly uncertain, is so well settled that I do not care to cite authorities or do more than express my dissent.

I think that on plaintiff's appeal there should be an affirmance.