287 P.2d 267 (1955)
DENVER BUILDING AND CONSTRUCTION TRADES COUNCIL, The International Union of Operating Engineers, Local No. 9, The International Association of Bridge, Structural and Ornamental Iron Workers, Local No. 24, Plaintiffs in Error,
v.
Henry SHORE, Defendant in Error.
No. 17417.
Supreme Court of Colorado, En Banc.
August 2, 1955.
Rehearing Denied September 6, 1955.
*268 Hornbein & Hornbein and Roy O. Goldin, Denver, for plaintiffs in error.
Wagner & Wyers, Denver, for defendant in error.
CLARK, Justice.
This action was originally commenced by defendant in error as plaintiff in the trial court to enjoin defendants, who are here as plaintiffs in error, for conduct allegedly violative of the provisions of the Colorado Labor Peace Act, C.R.S. '53, 80-5-1 et seq., and for damages accruing on account thereof. We will herein refer to defendant in error as plaintiff, to plaintiffs in error collectively as defendants, and individually as Denver Trade Council, Engineers Union and Iron Workers Union.
The controversy arose in Arapahoe county where plaintiff, under contract with the State Highway Department, was engaged in the construction of a highway project on Cherry Creek. In this work he employed both union and nonunion men, those engaged in the operation of the heavy construction machinery being members of the Engineers Union and receiving wages in accordance with the wage scale of that union; unskilled men and others not members of the union were not being paid union scale wages but were receiving pay substantially over that provided by the contract entered into between plaintiff and the State Highway Department. The work was progressing harmoniously with no contention or dispute between plaintiff and any of his employees over wages, working conditions or otherwise, until the situation hereinafter detailed arose through the intervention of a representative of the Denver Trades Council, found by the trial court to be an association of and agent for twenty-four labor unions in Denver and vicinity engaging in the construction business, including the defendants Iron Workers Union and Engineers Union.
The trial court further found, and its findings are amply supported by the record, *269 that on the evening of August 15, 1948, a representative of the Denver Trades Council demanded of plaintiff that he employ union labor exclusively on said state highway project to make the job 100% union, and to assign the work of laying and tying steel in forms for the construction of a bridge, a part of said project, to members of the Iron Workers Union instead of having said work done by unskilled labor, and declared to plaintiff that if these demands were not acceded to and put into effect by the following morning, union pickets would be placed on said project; that the plaintiff refused to agree to said demands and that pickets were so placed on the project on the following morning; that common laborers and carpenters immediately left the job but shortly thereafter returned; that members of the Engineers Union immediately quit work on learning of said picket line and thereafter continuously refused to man the machines employed on that contract although some of them later accepted similar assignment from plaintiff on work he was doing disconnected from that particular construction project; that aside from two members of said engineers union, plaintiff thereafter could procure no other skilled and efficient operators to man said machines and for that reason the work on said construction project was for a time seriously impeded and later considerably slowed down throughout the period that said picket line was maintained. The trial court further found that said cessation of work by the defendant Engineers Union was the result of the concerted action of the defendants and their agents and representatives and that said defendants had engaged in conduct which constituted an unfair and unlawful labor practice under the Colorado Labor Peace Act; that said defendants undertook to cause the plaintiff, as employer, to discriminate against employees who are not members of the union in an attempt to force plaintiff to employ union labor exclusively and to impel all of his employees to join a labor union; have attempted to coerce the plaintiff into assigning the laying and tying of steel in the forms for the bridge construction to the members of a particular union rather than to employees of some other classification; all of which have caused and is causing plaintiff substantial damage and delay in going forward with his work in pursuance of his contract. The trial court further found that although the picketing referred to had been conducted in a peaceful manner, that it was for an unlawful purpose and in an attempt to force the plaintiff to engage in labor practices to which, if he had acceded, would have caused him to violate the Colorado Labor Peace Act, and that all of said mentioned acts of defendants were and are violative of the provisions of said Act.
The findings of the trial court above referred to were entered by said court when, following extensive hearings, it directed the issuance of a permanent injunction against defendants on October 11, 1948.
The case has been before us on two previous occasions, the first being upon writ of error to review the granting of the injunction above mentioned, the report of which will be found in 124 Colo. 57, 234 P. 2d 620, 622; the second occasion being on procedural matters, the decision of which is reported in 128 Colo. 424, 263 P.2d 315. Upon remand following our last review pertaining to procedure the trial court adopted its findings and conclusions entered at the time of the granting of the injunction wherein it found the defendants to have been in violation of the provisions of the Colorado Labor Peace Act and added thereto only a general finding in favor of plaintiff and against the defendants on all issues, fixing the damages to be awarded plaintiff in the sum of $26,000 together with the further sum of $8,428.25 in lieu of interest on said $26,000 at the rate of 6% per annum from October 22, 1948, and the further sum of $3,250 as attorneys fees, and directed judgment accordingly. In our consideration of the present issues we have found it necessary to study the entire record, not only in this case, but also as made in the two preceding cases above mentioned.
In their summary of argument, counsel for defendants specify 13 separate points of alleged error, which we believe may *270 safely be consolidated under 5 topics as follows:
(1) That the State Court is without authority to determine the issues involved in the instant case or to make any award of damages therein for the reasons:
(a) That jurisdiction in labor cases is limited to the federal courts under the provisions of the Labor Management Relations Act of 1947, as amended, 29 U.S.C.A. § 141 et seq., generally referred to as the Taft-Hartley Law;
(b) That plaintiff having evoked the provisions of the federal Act is estopped from claiming under the Colorado law; and
(c) That neither the federal act nor the state statutes authorize an award of damages under the facts of this case.
(2) That the trial court erred in its determination of damages on the theory of "loss of use" of plaintiff's heavy machinery instead of requiring plaintiff to establish the extent of his profit depreciation resulting from the acts of defendants; and that in any event the evidence was insufficient to sustain the trial court's findings and conclusions.
(3) That the findings of the trial court concerning the amount of damages awarded are inadequate and insufficient to sustain the judgment.
(4) That the contract between the plaintiff and the Engineers Union had expired by a limitation of prescribed time prior to the occurrence of any of the acts complained of, and not being in effect at that time could not have been breached.
(5) That the allowance of damages in lieu of interest and of attorneys' fees as part of the judgment are without authority of any law, state or federal.
The record in this case justifies beyond all question of doubt the correctness of the finding of the trial court that, until the interference interposed by the representative of the defendants, peace prevailed on the highway project being constructed by plaintiff under contract, and that it was only due to the demands and agitation of said defendants' representative that the ensuing difficulty resulted. Under such circumstances, in the days prior to the enactment of legislation, state and national, designed for the peaceful settlement of labor disputes and controversy, one interfering with a work project of another, such as occurred in this instance, certainly would be held liable to the extent of all damages caused by such intrusion. Unless by the enactment of this more recent legislation the right to be so protected, under similar circumstances, has been eliminated, modified or otherwise circumscribed, it still exists.
The Labor Peace Act may be found as Article 5 of Chapter 80, C.R.S. '53. C.R.S. 80-5-6, in part, reads as follows:
"(2) It shall be an unfair labor practice for an employee individually or in concert with others:
* * * * * *
"(b) To coerce, intimidate or induce any employer to interfere with any of his employees in the enjoyment of their legal rights, including those guaranteed in section 80-5-4, or to engage in any practice with regard to his employees which would constitute an unfair labor practice if undertaken by him on his own initiative."
By 80-5-4, employees are given the right of self-organization, to form unions, to bargain collectively, and to engage in lawful concerted actions for the purpose of collective bargaining, and also the right to refrain from any and all such activities. It is declared that:
"Such rights of employees and each and all of them are essential rights and nothing hereinafter contained shall be so construed as to infringe upon or have any operation as against or in conflict with such rights and each and all of them."
At the time of the granting of the writ of injunction, as above detailed, the trial court found the defendants in violation of the provisions of the Colorado Labor Peace Act, the provisions referred to herein particularly, and specifically found that had the plaintiff yielded to the demands and coercion of the defendants that all labor employed on the job be 100% union he would have been required to violate the law to so do. The findings of the trial court to this effect *271 are amply supported by evidence in the record.
On behalf of defendants it is contended, however, that the Colorado Labor Peace Act must yield in its entirety to the Federal Taft-Hartley Law, and that the plaintiff was limited by said federal law to such conditions and provisions as are therein contained, and should have proceeded to a determination of the controversy under the provisions of that statute. A consideration of this question involves some fine, technical, legal distinctions, primarily, as we see it, being mostly in connection with cease and desist orders and in the nature of injunction. This question has been resolved in recent litigation and we are presently concerned with the matter of whether there was a violation of the statute only to the extent it affects the issue of damages. Many of the cases cited by counsel relate to interstate commerce and to the determination in the first instance of whether there existed an unfair labor practice either under the state law or the federal act. There are decisions which hold that the determination of this question is primarily one for the federal authorities, but with that issue we are not presently concerned for the reason that in this very case the matter was taken to the National Labor Relations Board and thence to the United States Court of Appeals, which affirmed that Board in its finding that the defendants were guilty of unfair labor practices. National Labor Relations Board v. Denver Building & Construction Trades Council, 10 Cir., 192 F.2d 577.
In logical sequence it must now clearly appear that since the U. S. Circuit Court's approval of the finding of the National Labor Relations Board that defendants had engaged in unlawful labor practices, with a similar finding of the state trial court supported by ample evidence, that issue, as likewise the point of whether injunction properly was ordered, must be regarded as definitely and finally settled. The remaining question involved in this topic, where it appears manifest that the defendants did engage in unlawful labor practices, is whether plaintiff may recover in damages for such wrongful interference with his project or business.
Counsel for defendants insist that since plaintiff instituted proceedings against defendants before the National Labor Relations Board, he may not now resort to the state court, but must obtain his relief, if any, through that board or pursuant to the provisions of the Taft-Hartley Act, which they contend affords no relief. With this theory we cannot agree. In the first place we think defendants' interpretation of the Taft-Hartley Act is erroneous, as it would award said relief to plaintiff under the circumstances here detailed if suit had been commenced in the Federal court, but this is rather beside the point since the action is in the state court. Primarily the fault in defendants' contention is that they overlook the fact that the National Labor Relations Board is but a fact finding board with limited authority to effectuate its determinations. Without a finding by the said Board that the law is being violated, it has sometimes been held that state courts are without authority to enjoin union activity, but where the determination of the board is to the contrary, as in the instant case, such determination definitely establishes a violation, leaving recovery of damages for the resulting injury to any court of competent jurisdiction. From a number of cases so holding we refer only to three: In the case of Charles H. Benton, Inc., v. Painters Local Union No. 333, Cal.App., 263 P.2d 854, 857, the author of the opinion said: "that since the union activity involved was not protected by the federal act it was not immunized from state action", adding the further comment that "While the idea is somewhat startling in these days, there is nothing inherently illegal in requiring a labor organization to live up to its written contracts." International Longshoremen's and Warehousemen's Union v. Juneau Spruce Co., 342 U.S. 237, 72 S.Ct. 235, 96 L.Ed. 275, affirming 9 Cir., 189 F.2d 177; United Construction Workers v. Laburnum Construction Corporation, 347 U.S. 656, 74 S.Ct. 833, 837, 98 L.Ed. 1025. Defendants' counsel insist that the Laburnum case is distinguishable and inept as an authority *272 in the instant case for the reason that there the tortious acts of the union members were so extreme and riotous as to necessitate action by the state courts, whereas in the case presently before us it is conceded that the picketing done by union representatives was peaceful and orderly. This is scarcely a proper basis for distinction as it goes not to the principle involved, but only to the extent of damage that might be properly determinable. Admitting that in the Laburnum case the tort was excessive and that in the present case it was mild and devoid of any rowdyism, nevertheless, in either case a recovery in damages for injury done on account of the illegal practice is necessarily upon the basis of tort. The following comments of Mr. Justice Burton, author of the opinion in the Laburnum case, are worthy of quotation:
"Here Congress has neither provided nor suggested any substitute for the traditional state court procedure for collecting damages for injuries caused by tortious conduct. For us to cut off the injured respondent from this right of recovery will deprive it of its property without recourse or compensation. To do so will, in effect, grant petitioners immunity from liability for their tortious conduct. We see no substantial reason for reaching such a result."
In the Laburnum case it was contended on behalf of petitioners, as do the defendants in the instant case, that damages under the Labor Management Relations Act is limited to such as result from secondary boycotts, which theory is completely exploded by the decision of Justice Burton in the Laburnum case by his recognition of the principle that damages for tortious conduct, aside from secondary boycotts, are recoverable in any court of competent jurisdiction, whether state or federal.
Regardless of the various ramifications of the federal statute, which are discussed herein only because defendants erroneously insist that the federal law controls, it must be remembered that this action is brought under the state law, where specific provision is to be found covering this situation. The applicable statute is 80-5-19, C.R.S. '53, reading as follows:
"80-5-19. Civil liability for damages. (1) Any person who suffers injury because of some act of unfair labor practice, as defined in this article, shall have a right of action, jointly and severally, against all persons participating in said action for damages caused to the injured person thereby.
"(2) If in accordance with this article or otherwise, persons otherwise unwilling to do so are induced to violate contracts of employment or for services or materials, any person injured thereby shall be entitled to recover at law against the persons, jointly and severally, so inducing the violation of such obligations and have judgment therefor."
The trial court based findings of the extent of damage upon the loss of use of heavy equipment due to the interference with his work project by the unlawful acts of the defendants. It is contended on behalf of defendants that the theory adopted by the trial court is erroneous and that the extent of damages should have been determined on the basis of loss of over-all profits on the job. They insist, that notwithstanding some delay in the completion of the contract by reason of the acts of defendants complained of, nevertheless, the plaintiff made a substantial profit on the job and could not have been damaged to the extent found by the trial court if determined on that basis. It seems to be defendants' position that since plaintiff made a profit, he could not have suffered damage. This is argument in a circle, since there is no way of determining the extent of profit which plaintiff would have realized had he not encountered the delay caused by the unlawful interference of the defendants. Defendants would propose loss of profits as the basis of recovery and then attempt to show that plaintiff failed in his proof. Should it appear that plaintiff had actually suffered a loss on the contract project, or made no profit at all, would defendants agree that the measure of damages is the difference between such deficit and the amount of profit normally accruing from similar contracts? We believe not. Many factors not involved here enter into profit *273 realization. It is impossible to allocate to each of several heavy machines on the job the proportion of the over-all profit attributable to the agency of each thereof. Apparently for this reason the rule has generally been adopted that where through unlawful or wrongful acts of defendants heavy equipment has been kept idle and the work expected to be accomplished thereby delayed, the fair rental value of such equipment during the period of prevention of its use is generally adopted as a proper measure for determination of the extent of damage. American Law Institute, Restatement of Torts, section 931; 17 C.J. 878, section 194; 25 C.J.S., Damages, § 83 c, p. 600; 15 Am.Jur., page 542, section 134; Elzy v. Adams Express Co., 141 Iowa 407, 119 N.W. 705; Terrell Co. v. Davis, 77 Okl. 302, 188 P. 676; Williams v. International Harvester Co., 172 Or. 270, 141 P.2d 837.
In our opinion the trial court followed the only logical method by which the extent of damages could be in any wise accurately measured. To have followed the theory advocated by defendants would have been pure guesswork and speculation. In adopting the loss of use rule the trial court had in its hand a yardstick by which accurate determination could be made. Such method, furthermore, is in keeping with the general rule that damages should be calculated in such manner as is most favorable to the party liable. It is logical that the rental cost or value of a machine would be less than the amount expected to be derived from its use. If it can be rented for a sum equal to the amount it will return in use, why use it? If one should rent a machine to do a specific job, would he not expect to make a profit for himself over and above the rental he would have to pay? Highway construction machinery has a well-established, recognized rental value which, in this case, was testified to by competent disinterested witnesses.
On behalf of defendants it is contended that the record does not support the findings of the court even on the basis of loss of use, but it would seem to us that the trial court has been careful and judicious in calculating the fair rental value of the machinery over the period its use was made unavailable to the plaintiff because of interference through the illegal acts of defendants. In its findings the trial court allowed full credit against plaintiff's claim for all the time that any of said machinery was employed by plaintiff on jobs other than the contract project. While it may be that others might have arrived at a somewhat different figure than did the trial court, we are unable, from the record, to say that its findings concerning the primary damage item are in any way unsupported by the evidence and, therefore, it must be and is sustained.
While it is true that the loss of use rule in the calculation of damage under circumstances as here detailed is more usually applied to instances where actual possession of the property is taken and detained by defendants and plaintiff is totally deprived thereof, we fail to see any merit in defendants' contention in the instant case that plaintiff retained actual possession of his machines and equipment. While it is undoubtedly true that defendants did not actually take possession of said equipment, they deprived plaintiff of the use thereof just as effectively as if they had put it under lock and key. When the members of the Engineers' Union violated their contract and walked off the job, individually refused to cross the picket line and, supported by the union in refusing to furnish union members to operate said machines, they completely immobilized and rendered entirely useless all of said machinery to the same extent as though it had been retained in their possession and actually impounded. It is simply a difference in the method of depriving the plaintiff of the use of his property and is ineffective to relieve defendants of liability for their breach of contract.
With respect to the engineers' contract it is urged before us that same had expired by limitation of its term before the occurrence of any of the acts complained of, and therefore there could have been no breach thereof. This is not in accordance with the record in this case which shows definitely that the contract was originally executed between plaintiff and the defendant engineers' *274 union; that by its terms it would have expired prior to the acts complained of by plaintiff except for the fact that it had been renewed for one year and was in full effect at the time of the events herein referred to. The trial court so found, the record so shows and the pleadings admit it.
It is objected that the findings of the trial court with respect to damages are inadequate and insufficient to form the basis of any award. The record fails to disclose a request on behalf of defendants for special findings, and even though such request had been made and refused, it is not incumbent upon the trial judge to prepare, nor is he required to file in the record an exact detailed accounting or bill of particulars of all items which he has considered in arriving at his conclusions. He need make only pertinent general findings and is not obliged to go into detail as defendants' counsel seem to believe.
Objection was made on behalf of defendants to the allowance by the trial court of the sum of $8,428.25 as additional damages, being an amount equal to and apparently in lieu of interest at the rate of 6% per annum on the principal damage item of $26,000. On behalf of plaintiff it is urged that the item is not interest but a proper item in the calculation of damages. If this be true we are inclined to believe that such an "in lieu" item might well be included in all damage actions wherein interest was not allowed by statute. We think the better rule would be to adhere to our formerly announced general policy that interest, or any other sum equal to and in lieu thereof, can, in the absence of contract, be awarded only when specifically provided for by statute. Denver, South Park & Pacific Railroad Co. v. Conway, 8 Colo. 1, 16, 5 P. 142; West Elk Land & Livestock Co. v. Telck, 71 Colo. 79, 205 P. 270; Keeney v. Angell, 92 Colo. 213, 19 P.2d 215.
What we have said with reference to interest is generally true also with respect to allowance of attorneys' fees. It has been the policy of the law in this jurisdiction that, in the absence of contract or appropriate valid statutory enactment, attorneys' fees are not recoverable by way of damages, are not allowable as part of the cost of litigation for which recovery may be had by the successful litigant, but are a burden upon the employer of counsel as his contribution of the general over-all cost of the litigation. We find nothing under the Colorado Labor Peace Act which allows either interest or attorneys' fees and in its inclusion of these two items in the judgment against defendants in the instant case we believe the trial court to have been in error.
It is, therefore, ordered that the cause be and hereby is remanded to the trial court with instructions that the judgment be modified by excluding therefrom the said sums of $8,428.25 and $3,250, thus reducing the judgment to the sum of $26,000, and the judgment as so modified is affirmed.
MOORE, J., not participating.