2012 CO 56

Judith KOENIG, Petitioner/Cross–Respondent

v.

PURCO FLEET SERVICES, INC., a Utah Corporation, Respondent/Cross–Petitioner.

No. 10SC159.

Supreme Court of Colorado, En Banc.

Sept. 10, 2012.

Rehearing Denied Oct. 1, 2012.*

Spies, Powers & Robinson, P.C., Brendan O. Powers, Jack D. Robinson, Denver, Colorado, Attorneys for Petitioner/Cross–Respondent.

Holland & Hart LLP, Stephen G. Masciocchi, Denver, Colorado, Van Cott, Bagley, Cornwall & McCarthy, Stephen K. Christiansen, Salt Lake City, Utah, Attorneys for Respondent/Cross–Petitioner.

* Justice Hobbs and Justice Rice would grant the petition.

Justice EID delivered the Opinion of the Court.

¶ 1 The dispute before us arises out of a rental car contract between Petitioner/Cross–Respondent Judith Koenig ("Koenig") and BDD Enterprises, LLC d/b/a National Car Rental at the Durango Airport ("National"). Koenig hit a deer while driving a rental vehicle. After the accident, National assigned its damage claim to Respondent/Cross–Petitioner PurCo Fleet Services, Inc. ("PurCo"). PurCo sued Koenig to collect damages related to the incident, including damages for loss of the vehicle's use during the time it was being repaired. PurCo sought to measure loss of use damages by using the reasonable rental value of a substitute vehicle. Koenig filed a motion for summary judgment. In granting Koenig's summary judgment motion, the trial court held that PurCo could prevail on its loss of use damages claim only if it suffered actual lost profits, and that it could not recover in this case because it failed to show National would have rented out Koenig's vehicle had it not been damaged.

¶ 2 PurCo appealed and Koenig cross-appealed. The court of appeals reversed the trial court's summary judgment ruling on loss of use damages and remanded the case. It agreed with the trial court's conclusion that, in general, the appropriate measure of loss of use damages in a commercial setting is actual lost profits, but concluded the rental agreement in this case altered the measure of loss of use damages. It interpreted the operative language in the rental agreement—that Koenig was obligated to pay "loss of use [damages] (regardless of fleet utilization)"—to relieve PurCo of the obligation to show that National would have rented Koenig's vehicle during the period of repair, as opposed to renting another vehicle in its fleet. Instead, the court of appeals held that PurCo was required to show certain "loss prerequisites," specifically, that on each day the damaged vehicle was being repaired, National made vehicles available to rent and at least one customer wanted to rent a vehicle. *PurCo Fleet Services, Inc. v. Koenig*, 240 P.3d 435, 442 (Colo.App.2010).

¶ 3 Both PurCo and Koenig filed petitions for certiorari in this court, which we granted. We now affirm the court of appeals on different grounds. Under *Denver Building & Construction Trades Council v. Shore*, 132 Colo. 187, 287 P.2d 267 (1955), loss of use damages in a commercial setting may be measured either by actual lost profits or by reasonable rental value. We interpret the contractual language at issue in this case— holding Koenig responsible for loss of use damages "regardless of fleet utilization"—to mean that PurCo is entitled to recover loss of use damages regardless of whether National would have rented out the vehicle Koenig damaged or any vehicle in its fleet during the period of repair. Said differently, PurCo is entitled to recover loss of use damages irrespective of its actual lost profits. Thus, the contract language allowing PurCo to recover "loss of use [damages] (regardless of fleet utilization)" entitles it to reasonable rental value of a substitute vehicle.

## I.

¶ 4 Koenig hit a deer while driving a vehicle she rented from National, causing minor damage. The contract between Koenig and National states that Koenig is responsible for:

all damage to or loss of the Vehicle, based on repair cost or estimated repair cost, at [National's] option, diminished value of the Vehicle as determined by [National], plus towing and [National's] *loss of use (regardless of fleet utilization)* and administrative charges, regardless of who is at fault.

(emphasis added). After the accident, National assigned its damages claim to PurCo. PurCo then billed Koenig for, *inter alia,* National's loss of use of the vehicle. PurCo calculated its loss of use damages by multiplying the estimated repair time of 6.75 days by the rental rate Koenig paid, $33.89 per day, for a total of $228.76. When Koenig refused to pay the loss of use portion of the bill, PurCo sued Koenig for breach of contract, alleging that she breached the rental contract by failing to pay damages for loss of

use of the vehicle.[1] The trial court granted summary judgment in favor of Koenig because it determined PurCo would have to show actual lost profits to recover loss of use damages, and that it could not do so in this case because it had failed to show National would have rented the vehicle to another customer had the vehicle not been damaged. Accordingly, the trial court determined PurCo could not prove any loss of use damages.

¶ 5 On appeal, the court of appeals affirmed in part, reversed in part, and remanded the case with directions. The court of appeals concluded that the trial court erred in granting summary judgment in favor of Koenig. In doing so, it examined loss of use theories at length and decided "a plaintiff must demonstrate an actual, economic loss rather than just an assumed intrinsic loss" to recover for lost use of commercial chattels, reading *Denver Building* as permitting reasonable rental value only where lost profits could not be shown. *PurCo*, 240 P.3d at 440. The court of appeals determined the requirement of proving "actual, economic loss" in this case was altered by the contract, under which PurCo was entitled loss of use damages from Koenig "regardless of fleet utilization." It interpreted the operative language in the rental agreement to relieve PurCo of the obligation to show, as the trial court held, that National would have rented out Koenig's vehicle during the period of repair, as opposed to renting out another vehicle in its fleet. Instead, the court of appeals held that PurCo was required to show certain "loss prerequisites," including that, on each day during the period of repair: (1) National made vehicles available to rent and (2) at least one customer desired a rental vehicle. *Id.* The court of appeals remanded this case for additional evidence regarding whether the "loss prerequisite" test could be satisfied.

¶ 6 Koenig petitioned for certiorari, PurCo cross-petitioned, and we granted certiorari to

two issues.[2] We now affirm, albeit on different grounds, the court of appeals ruling that the trial court erred in entering summary judgment for Koenig, and vacate its opinion with respect to loss of use damages and loss prerequisites. Because the trial court granted summary judgment in Koenig's favor, it did not reach the question of how reasonable rental value would be calculated in this case. Accordingly, we remand this case for calculation of the reasonable rental value of a substitute vehicle.

## II.

¶ 7 In this case, Koenig deprived National of the use of its chattel (the rental vehicle) for the period of time while it was being repaired—a tort under Colorado law. *See Denver Building & Construction Trades Council v. Shore*, 132 Colo. 187, 287 P.2d 267 (1955). The rental contract between Koenig and National provides for a remedy if such loss of use were to occur. Specifically, it obligated Koenig to pay National for "all damage to or loss of the Vehicle ... [plus] ... *loss of use (regardless of fleet utilization)*." (Emphasis added). Thus, in order to determine what damages, if any, Koenig owes National (now PurCo) for loss of use of its vehicle, we must interpret the contractual phrase "loss of use (regardless of fleet utilization)." In order to give context to our interpretation, we begin by examining the appropriate measures of damages to compensate a commercial entity for lost use of a chattel, and then, given that context, we consider the contract language at issue in this case.

## A.

¶ 8 It is well-established that Colorado law permits recovery of damages when a plaintiff is wrongfully deprived of the ability

---

1. PurCo also sought to recover for damage to the vehicle itself and an administrative charge. These damages are not at issue in this appeal.

2. Specifically, we granted certiorari to the following issues:
   1. Whether the court of appeals erred in concluding that the measure of damages for loss of use is net lost profits.

2. Whether the court of appeals erred in interpreting a car rental agreement permitting loss of use damages "regardless of fleet utilization" as providing for such damages by proof of certain "loss prerequisites."

to use a chattel. *See, e.g., Denver Building,* 132 Colo. 187, 287 P.2d 267; *Francis v. Steve Johnson Pontiac–GMC–Jeep, Inc.,* 724 P.2d 84 (Colo.App.1986). This case requires us to consider how loss of use damages are to be measured.

¶ 9 We last addressed loss of use damages in *Denver Building,* 132 Colo. at 199, 287 P.2d at 272, where we held that reasonable rental value is a proper measure of damages when a commercial entity is wrongfully deprived of the use of its chattel. In that case, a construction contractor sued to recover loss of use damages for heavy equipment kept idle as a result of a work stoppage. To support the conclusion that reasonable rental value was a proper measure of damages, we relied on the Restatement (First) of Torts § 931 (1939), which provided that damages could be measured by "the amount paid for a substitute." [3] We rejected the argument that loss of use damages must be measured by lost profits made on the contracts to which the equipment would have been used, concluding that "many factors" enter into profit realization and presenting evidence of lost profits can involve "guesswork and speculation." *Id.* at 198–99, 287 P.2d at 272–73. By contrast, we concluded reasonable rental value provided "a yardstick by which [an] accurate determination [of damages] could be made." *Id.* at 199, 287 P.2d at 273.

¶ 10 The court of appeals concluded, and Koenig argues here, that *Denver Building* merely set forth an exception to the general rule that loss of use damages are to be measured by lost profits, reasoning that deviation from the general rule was justified in that case only because lost profits were difficult to determine given the facts. *PurCo,* 240 P.3d at 444. Because lost profits can be "calculated with relative ease and certainty" in this case, the court of appeals explained, reasonable rental value is an inappropriate measure of damages. *Id.* We disagree with

this analysis of *Denver Building* for several reasons.

¶ 11 First, the court of appeals' interpretation is inconsistent with this court's holding in *Denver Building.* This court made clear that "the fair rental value of such equipment during the period of prevention of its use is *generally* adopted as a proper measure for determination of the extent of damage." *Denver Building,* 132 Colo. at 198, 287 P.2d at 273(emphasis added) (citing, *inter alia,* the Restatement (First) of Torts § 931). Moreover, the court of appeals' interpretation is inconsistent with *Denver Building*'s reliance on the Restatement (First) of Torts, which at the time provided, and continues to provide, that loss of use damages can be measured *either* by lost profits *or* reasonable rental value. *See* Restatement (First) of Torts § 931(a) (explaining that loss of use damages may be measured by "the value of the use [of the chattel] during the period of detention," or "the amount paid for a substitute"); Restatement (Second) of Torts § 931(a) (1979) (same). As we suggested in *Denver Building,* the concepts of lost profits and reasonable rental value both capture the same loss—that is, an owner's loss caused by the deprivation of a chattel—but measure the loss differently. 132 Colo. at 198–99, 287 P.2d at 272–73; *see also United Engine Parts, Inc. v. Ried,* 283 Or. 421, 584 P.2d 275, 281 (1978) ("Defendant's loss of use of his truck … would be compensated for by his recovery of either the reasonable rental value of a replacement truck to carry on his business or, if rental were not feasible, by net profits his use of the truck would have generated during the period in question. He could not recover both, because either makes him whole.").

¶ 12 The court of appeals recognized that reasonable rental value had been adopted by *Denver Building* and other courts as an appropriate measure of loss of use damages, but it was "persuaded" by Professor Alan E.

---

**3.** The Restatement (First) of Torts § 931 (1939 & Supp. 2011) states in relevant part:

Where a person is entitled to a judgment for the detention of, or for preventing the use of, land or chattels, the damages include an amount for

(a) the value of the use during the period of detention or prevention, *or the value of the use of or the amount paid for a substitute* ....

(emphasis added).

Brownstein's argument[4] that damages should be limited to lost profits in the commercial context. *PurCo*, 240 P.3d at 443–45. Otherwise, according to Professor Brownstein, a commercial entity might be "overcompensate[d] ... for its loss." *Id.* at 445. That is because, under Professor Brownstein's reasoning, a commercial entity that would not have actually used the chattel itself or rented it to someone else suffers no loss at all. *Id.* at 444–45.

¶ 13 Again, we disagree with this reasoning because it is inconsistent with our governing precedent in *Denver Building*. As we stated in that case, reasonable rental value is an appropriate measure of damages in a commercial setting even where the chattel owner would have made "no profit at all" on the project in which the chattel was to be used. *Denver Building*, 132 Colo. at 198, 287 P.2d at 272. This premise is also reflected in the Restatement, which provides that reasonable rental value is an appropriate measure of damages even when the chattel owner "was not using the subject matter at the time or had a substitute that he used without additional expense to him." Restatement (First) of Torts § 931 cmt. b; Restatement (Second) of Torts § 931 cmt. b. As another division of the court of appeals concluded in the context of criminal restitution, *Denver Building* and the Restatement recognize that there is an intrinsic loss from the deprivation of property separate and apart from an out-of-pocket expense. *People v. Suttmiller*, 240 P.3d 504, 508–09 (Colo.App.2010) (citations omitted) (distinguishing *PurCo* on the ground that it involved commercial context).

¶ 14 We join those courts holding that the deprivation of the use of commercial chattel causes harm to the chattel owner because the owner lost the right to use its chattel. As the Second Circuit explained in the context of the loss of use of an aircraft, "[a]n owner has the right to employ the [chattel] in an attempt to make a profit whether he succeeds in making it or not. . . . For it is the right to use that marks the value." *K.L.M. v. United Techs. Corp.*, 610 F.2d 1052, 1056 (2d Cir.1979); *see also Kuwait Airways*

*Corp. v. Ogden Allied Aviation Servs.*, 726 F.Supp. 1389, 1396–97 (E.D.N.Y.1989) ("[O]wnership of a [chattel] represents a bundle of valuable opportunities ... [including] holding it in reserve [and all opportunities] are [ ] temporarily lost when a tortfeasor renders the [chattel] unserviceable for a period of time. That opportunity cost *cannot* be valueless; it *must* be worth something."). If the court of appeals and Koenig were correct that a commercial entity must prove a lost opportunity to recover loss of use damages, then anyone could wrongfully take possession of a commercially owned or leased chattel— and eventually return it in a similar condition—without liability unless the owner could prove a lost economic opportunity or lost profits. We find this position untenable.

¶ 15 Finally, unlike the court of appeals, we do not interpret the Restatement (Second) of Contracts § 348 as adopting a different rule, as it suggests that if a breach of contract delays the use of property, lost profits is an acceptable method of measuring damages, but reasonable rental value may also be used. *See* Restatement (Second) of Contracts § 348(1) ("If a breach delays the use of property and the loss in value to the injured party is not proved with reasonable certainty, he may recover damages based on the rental value of the property or on interest on the value of the property."). More importantly, however, PurCo's breach of contract claim in this case is *not* that Koenig breached the rental agreement in some way and thereby "delay[ed] the use of property," as is required for section 348 of the Restatement of Contracts to apply. In other words, there is no claim here that Koenig's breach of contract caused the loss of use. Instead, the claim is that, given the loss of use of its vehicle caused by Koenig's hitting the deer, National (now PurCo) must be compensated for any "loss of use (regardless of fleet utilization)" and that Koenig breached the contract by failing to do so. Thus, section 348 is simply inapplicable to this case.

■ ¶ 16 In sum, we hold that the reasonable rental value of a chattel or, alternatively, net lost profits that could have been earned

---

4. *See* Alan E. Brownstein, *What's the Use? A Doctrinal and Policy Critique of the Measurement of Loss of Use Damages*, 37 Rutgers L.Rev. 433 (1985).

by using the chattel approximate loss of use damages. Plaintiffs may elect which measure of recovery to pursue, but either makes them whole.

### B.

¶ 17 Given this context, we now consider the contractual language at issue in this case, which obligated Koenig to pay loss of use damages "regardless of fleet utilization."

¶ 18 The court of appeals concluded that the "regardless of fleet utilization" language "alters the requirement to prove actual, economic loss, [but] it does not eliminate it entirely." *PurCo*, 240 P.3d at 441. It went on to create the "loss prerequisite" test to address the appropriate burden of proof in light of the contract's language. Specifically, to recover loss of use damages, the court of appeals required PurCo to prove that, on the days during the period of repair, (1) National made vehicles available to rent and (2) at least one customer desired a rental vehicle. *Id.* at 442.

¶ 19 We disagree with the court of appeals' interpretation of the contractual language in this case. The contract states PurCo is entitled to recover loss of use damages "regardless" of how National would have "utilized" its fleet of vehicles. Thus, PurCo is entitled to recover loss of use damages whether or not National would have rented any vehicle in its fleet, including the particular vehicle rented by Koenig, during the period of repair. Stated differently, we read the contractual language as entitling PurCo to loss of use damages irrespective of lost profits because lost profits directly correlate to fleet utilization. Any other reading would give no effect to the contract's terms. The court of appeals' "loss prerequisite" test is problematic because it conditions recovery on demonstrating lost profits—that is, demonstrating that National would have rented vehicles during the period of repair. Because the court of appeals' interpretation is incompatible with the contractual language, we decline to adopt it.[5]

5. Because we find that PurCo need not demonstrate "fleet utilization," or lost profits, in order to recover loss of use damages in this case, we

■ ¶ 20 Instead, consistent with our discussion of loss of use damages, we find that PurCo is contractually entitled to recover from Koenig the reasonable rental value of a substitute vehicle during the period of repair. Accordingly, we affirm the court of appeals' ruling that the trial court erred in entering summary judgment for Koenig, and we vacate the court of appeals opinion with respect to loss of use damages and loss prerequisites. Because the trial court granted summary judgment in Koenig's favor, it did not reach the question of how reasonable rental value would be calculated in this case. Accordingly, we remand this case for calculation of the reasonable rental value of a substitute vehicle.

### III.

¶ 21 For the foregoing reasons, we affirm the decision of the court of appeals, albeit on different grounds, and remand the case for further proceedings consistent with this opinion.

Justice RICE dissents and Justice HOBBS joins in the dissent.

Justice RICE, dissenting.

¶ 22 I would hold that this case is governed by contract law and that damages in this case are limited to lost profits. I would further hold that PurCo cannot demonstrate its lost profits with reasonable certainty. Accordingly, I would reverse the judgment of the court of appeals and grant summary judgment in favor of Koenig. Therefore, I respectfully dissent.

### I. Contract Measure of Damages

¶ 23 The majority looks to tort law and the Restatement of Torts to determine whether reasonable rental value is the appropriate measure of damages. Under tort principles, it reasons, the plaintiff may elect either lost profits or the reasonable rental value of the vehicle to quantify its damages.

find it irrelevant whether PurCo can produce "fleet utilization" records.

¶ 24 This case, however, involves only a claim for breach of contract. PurCo did not assert a tort claim. National and Koenig entered into a contract—the rental agreement. The contract governs their respective rights and obligations in the event of damage to the vehicle while in Koenig's possession. The majority would determine damages in this contract action by interpreting the contract's damages provision according to tort principles. Maj. op. at ¶ 7. Because the damages arise out of a breach of contract—the failure to return the car in its original condition—I would look to contract law to determine the appropriate remedies in this case.

¶ 25 Under general principles of contract law, when a breach of contract results in a delay of the use of property, the aggrieved party is entitled to lost profits as its remedy. *Acoustic Mktg. Research, Inc. v. Technics, LLC,* 198 P.3d 96, 98 (Colo.2008); *see also Restatement (Second) of Contracts* §§ 348(1), 348 cmt. b (1981). Only if lost profits cannot be proved with "reasonable certainty" may a plaintiff seek damages quantified by reasonable rental value of replacement property or interest. *See Acoustic Mktg. Research,* 198 P.3d at 98 (damages are not recoverable for losses beyond an amount that can be established with reasonable certainty); *Pomeranz v. McDonald's Corp.,* 843 P.2d 1378, 1381 (Colo.1993) (same); *Restatement (Second) of Contracts* § 348(1) ("If a breach delays the use of property and the loss in value to the injured party is not proved with reasonable certainty, he may recover damages based on the rental value of the property or on interest on the value of the property."). Therefore, I would hold that PurCo is entitled to lost profits as loss of use damages.

¶ 26 PurCo argues, however, that lost profits are not the proper measure of damages in its breach of contract claim for two reasons. First, it asserts that it cannot demonstrate lost profits because the records containing that information were destroyed as part of National's routine document destruction policy. Second, it argues that the contract in this case provides for an alternative measure of damages and thus it need not show lost profits. I find both of these arguments without merit.

¶ 27 First, PurCo could demonstrate with reasonable certainty the lost profits suffered as a result of the damage to the vehicle. *See Restatement (Second) of Contracts* § 352 cmt. b (1981) ("If the breach prevents the injured party from carrying on a well-established business, the resulting loss of profits can often be proved with sufficient certainty."). National kept certain records, including rental records, as a part of its normal business operations and therefore could calculate use and lost profits. *See id.* Koenig requested the rental records and proof of lost profits immediately upon receiving a demand for loss of use payment from PurCo. PurCo nevertheless asserts that it cannot demonstrate lost profits because National destroyed its fleet utilization records for the period that the vehicle was being repaired. National only retains rental records for 120 to 160 days. Koenig requested the records within that timeframe, but PurCo chose not to seek the records from National. The records would have enabled PurCo to establish with reasonable certainty an approximation of lost profits. *See Acoustic Mktg. Research,* 198 P.3d at 98 ("[A]s long as the fact of future loss is certain, the amount of damages awarded may be an approximation.").

¶ 28 PurCo's inability to satisfy its burden of proof with respect to lost profits was a result of its imprudent business practices. National's failure to preserve evidence does not render the lost profits speculative and does not entitle PurCo to an alternative remedy. Rather, if PurCo had not mismanaged evidence relevant to its claim, it could have proven lost profits with sufficient certainty. I therefore believe that PurCo is only entitled to lost profits in this case and not an alternative measure of damages.

## II. Rental Agreement

¶ 29 PurCo also asserts that the parties agreed that the damages would be measured in terms of reasonable rental value rather than lost profits. The agreement provides, in relevant part:

> [Koenig] will pay [National] for all damage to or loss of the Vehicle, based on repair cost or estimated repair cost, at [National's] option, diminished value of the Vehicle

as determined by [National], plus towing and [National's] loss of use (regardless of fleet utilization) and administrative charges, regardless of who is at fault.

In essence, PurCo contends that the parties intended to contract around the usual measure of damages and provide a special damages provision akin to a liquidated damages provision.

¶ 30 The agreement, however, fails to specify the loss of use remedy such that both parties could have agreed to it at the contract's formation. The meaning of the phrase "loss of use (regardless of fleet utilization)" is not clear from the contract. The contract gives no explanation of the meaning of "loss of use (regardless of fleet utilization)" and no indication of how such damages will be calculated. In fact, the record shows that PurCo actually set the terms of the measure of damages for loss of use after the damage to the vehicle. After receiving the initial demand for payment from PurCo,[1] Koenig requested further detail regarding the calculation of the loss of use amount. PurCo provided a one page summary explaining "loss of use." Included in the summary was a detailed formula employed by PurCo in determining the loss of use damages.[2] These terms were never referenced in the original rental agreement or incorporated in any way. Because the terms were not clear and specified from the beginning, I would hold that Koenig and National did not agree to alter the measure of damages.

¶ 31 In any event, PurCo would still be entitled to recover its lost profits. The fact that a special or liquidated damages provision is not enforceable does not preclude recovery of actual damages for breach of the contract. *H.M.O. Sys., Inc. v. Choicecare Health Servs., Inc.,* 665 P.2d 635, 639 (Colo. App.1983); *Oldis v. N.W. Grosse–Rhode,* 35 Colo.App. 46, 52, 528 P.2d 944, 947 (1974). PurCo's actual damages are lost profits. Because the record reflects, however, that PurCo cannot demonstrate its lost profits for the period, I believe that the trial court correctly granted summary judgment in Koenig's favor and I would therefore reverse the judgment of the court of appeals.

I am authorized to state that Justice HOBBS joins in the dissent.

---

1. In its demand, PurCo itemized the loss of use expenses as "$228.76 Loss of Use (6.75 days at $33.89)*." The reference to the asterisk states: "Loss of use calculation is based upon the damage repair valuation. Actual loss of use days may vary." The time to repair the vehicle was calculated based on an estimate provided by a local auto body shop in Durango, Colorado.

2. "Our loss of use charge is determined by a three-part formula which calculates the number or days that the vehicle was out of service multiplied by the daily rental rate on the contract. First, for purposes of our formula, one day is equal to four labor hours, representing the average number of hours that a vehicle is worked on per day. Second, two weekend days are added for every five repair days, assuming that every repair begins on a Monday to allow for the fewest weekends possible. Third, three administrative days are allowed to obtain an estimate, take the vehicle to the shop and retrieve the vehicle. (For example, if the estimate requires 26 labor hours, then the formula works thus: 26 hours divided by 4 = 6.5; add 2 weekend days = 8.5; add 3 administrate days = 11.5; multiply 11.5 by a daily rental rate $42.00 = a loss of use charge of $483.00). *This is the estimated loss of use charge and is subject to change."*